## Sinton Case.

234

Argued December 7, 1943. Before BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, J. (KELLER, P. J., absent).

*H. G. Stutzman,* for appellant.

*J. F. Mahoney,* with him *Charles L. Frank,* for appellee.

OPINION BY RENO, J., January 27, 1944:

This is the second phase of *Sinton's Case,* 151 Pa. Superior Ct. 543, 30 A. 2d 628. Upon the return of the

record to the court below, a hearing de novo not having been requested, that court reviewed the testimony produced before the board of school directors, and entered an order reversing the Superintendent of Public Instruction who had reversed the action of the board, and sustained the dismissal. The only error assigned is the order of the court and, therefore, the only question before us is whether the order is supported by the findings of fact and constituted a valid cause for the termination of the teacher's contract: *Spruce Hill Township School District v. Bryner,* 148 Pa. Superior Ct. 549, 25 A. 2d 745.

The court below did not formulate its findings of facts in numbered paragraphs, following the practice in equity, which would have been preferable, but its opinion sufficiently indicates the evidence which it believed credible and controlling. In the main, it found substantially the same facts which were stated by Judge BALDRIGE in our first opinion. After a brief discussion of those facts the court concluded that appellant's "negligence in failing to comply with the board's regulation was persistent and wilful, and in violation of the school laws of the Commonwealth."

The order is amply sustained by the evidence. The resolution of the board, especially after the amendment which afforded the teacher time until June 1, 1941, to establish a residence within the township, was a reasonable regulation: *Jones v. Kulpmont Borough School District,* 333 Pa. 581, 3 A. 2d 914. Nothing on its face indicates arbitrary or capricious action. If it is unreasonable, extraneous circumstances make it so, and the burden of proving such factors rests upon the party who asserts their existence. That is, appellant carried the burden of proof; she was obliged to show that the resolution was unreasonable or that the manner of its enforcement was unreasonable and arbitrary. She might have discharged that obligation by showing that

suitable housing accommodations were not available in the township. Instead, she testified that she had inquired of several fellow teachers about vacant houses. She does not testify what replies she received, and we assume that they answered that they knew of none. She made no inquiries of business people, school directors or other persons who could be expected to know of vacant houses. Her case, in that respect, rests upon essentially negative testimony, and such testimony cannot halt the enforcement of a resolution which carries every presumption of reasonableness.

After these feeble attempts to find a house, she addressed a letter to the board, dated May 23, 1941, expressing her willingness to comply with the resolution, that she had not been able to find an available house and requested permission to remain at her home in Llewellyn "until such accommodations can be furnished me". The day following the close of the school term of 1941, she joined her husband at Langley Field, Virginia, and after that date she exerted no effort to find a home in Cass Township. It was her duty to comply with the resolution; the duty of finding a home was upon her; the board was not required to find a house for her. Nevertheless, the supervising principal, on behalf of the board, wrote to her on July 7, 1941, that a house was available at Pine Knot, "consisting of eight rooms and bath, with ideal surroundings" and adding that the owner "will take our recommendation for a tenant for this home." He requested her to inspect the home and to "answer as to your intentions of moving into this home on or before Saturday, July 12, 1941." On July 10, 1941, writing from Langley Field, she said, in part, "I wish to state that it would be a hardship for me to return to Pennsylvania at this time to inspect a house. If this house, or any other suitable house, is vacant when I return to Pennsylvania the day preceding the opening of school I shall be glad to look it over and

make my decision regarding it at that time." A fair construction of the letter is that, although she was in default since June 1, 1941, in failing to establish residence in the township, she intended to do nothing about the house which was open to her inspection, and would make no effort to find a house until she returned to her school work on the first day of the new school term. With no expression of thanks for the board's voluntary effort to assist her in finding a home, she cooly informed it that she would give the matter attention when she returned to Pennsylvania. Thus, to her default which began on June 1, 1941, when she failed to establish a residence in conformity to the resolution, she added an expression which at the least indicated complete indifference to her duty of complying with the resolution. Her counsel suggests that the board commanded her to move into the house, but the letter itself refutes the idea; it was an invitation to inspect the house and a request for "an answer to your *intentions* of moving into this home on or before Saturday, July 12, 1941." (Italics supplied).

At the hearing before the school board upon the charges it had preferred against her, she testified that she was unwell when the letter of the school board was received and that, because of that condition and because she and her husband were contemplating moving to other quarters, it would have been a hardship to travel to Pennsylvania. Possibly, a frank statement of these conditions to the board in her reply of July 10th might have produced a further extension of time. Be that as it may, the fact is that, as pointed out by the court below, by her letter she expressly reserved to herself the right to make her decision on the day preceding the opening of the next school term. In effect, she was telling the board that she would not inspect the house; would not attempt to comply with its resolution until she returned to Pennsylvania; and was herself

choosing the time when she would comply with the board's resolution. This is the very core of the case. There was not only one act of negligence, as her counsel argues; she was negligent on every day after June 1, 1941; it was continuing and, therefore, persistent negli· gence; and it became wilful when she announced that she would make a decision at her own pleasure, and not before she returned to Pennsylvania.

A great ado was made in the argument concerning appellant's application for a leave of absence. The court below made no finding respecting it, but it was referred to in the decision of the Superintendent of Public Instruction. Upon some unknown date prior to July 7th, possibly June 26, 1941, appellant applied to the board for a leave of absence. The purpose for which the leave was sought has not been stated and we have no means of ascertaining whether its grant would have been warranted by the legislation then in force. It was not acted upon and was, therefore, pending when the charges were tried. The pendency of this application seems somehow, according to appellant's argument and the theory of the Superintendent of Public Instruction, to cover her with a cloak of immunity, or to suspend the operation of the resolution. It can have no such effect. Whether the teacher is entitled to a leave as a matter of right or only within the discretion of the board (Act of July 1, 1937, P. L. 2579, as amended by the Act of July 28, 1941, P. L. 562, §1, 24 PS §1211), the application always requires action by the board. The board may grant it, deny it or ignore it, and until it is granted the applicant's status remains unchanged.

Order affirmed at appellant's costs.

RHODES, J., dissents.