## Goff *v.* Shenandoah Borough School District et al., Appellants.

Argued December 8, 1943. Before BALDRIGE, STADT-FELD, RHODES, HIRT, KENWORTHEY and RENO, JJ. (KELLER, P. J., absent).

*James J. Gallagher,* with him *Frank J. Toole* and *Frank A. Gallagher,* for appellants.

*Henry Houck,* for appellee.

OPINION BY BALDRIGE, J., January 27, 1944:

The plaintiff had been employed as a teacher by the school district of the Borough of Shenandoah, Schuylkill County, since 1926. Her contract was renewed on June 3, 1937, after the effective date of the Teachers' Tenure Act of April 6, 1937, P. L. 213. She was "suspended indefinitely" on January 9, 1941, because of her marriage to Harry Goff some four months previously. She filed a petition for an alternative writ of

mandamus seeking reinstatement and damages. Issue was joined and a trial had, which resulted in the court's directing verdict for plaintiff for damages and ordering her reinstated, holding that defendants presented no valid defense to the writ. This appeal followed.

The board proposed to establish by the testimony of past and present secretaries of the school board that there was a rule, regulation, custom, or usage to suspend female teachers upon their becoming married; that this fact was known to all female teachers including the plaintiff; and that several teachers, who married while in service, in recognition of that rule resigned. Concededly, no rule or regulation was ever formally passed or reduced to writing. There was no attempt to show that any teacher previously had been suspended or dismissed by the board because of her marriage. The court refused to admit that evidence, holding that if such a rule were properly established it would not be a cause for suspension under the Teachers' Tenure Act.

It is conceded on both sides that marriage of a female teacher is not one of the grounds for suspension mentioned in section 2(b) of the Teachers' Tenure Act of 1937, supra, as amended by the Act of June 20, 1939, P. L. 482, 24 PS §1126, which enumerates the following causes: (1) substantial decrease in pupil enrollment; (2) curtailment or alteration of the educational program; and (3) consolidation of schools. Those are the legal standards to be applied in determining whether a teacher should be suspended. Appellants argue, however, that section 404 of the School Code of May 18, 1911, P. L. 309, as amended, 24 PS §338, gives the board the right to adopt reasonable rules and regulations as it deems necessary regarding the management of school affairs, conduct and such of teachers, which warranted them in suspending plaintiff.

In *Jones v. Kulpmont Borough School District,* 333

Pa. 581, 3 A. 2d 914, the board attempted to suspend a permanent supply teacher on the ostensible ground of elimination of the position, although their real reason, as found by the lower court, was her non-residence within the district. The court held there that in the absence of statutory provisions or a valid rule or regulation on the part of the school district an employe is not required to reside within the district, but that a school board may adopt a reasonable regulation to that effect because of the nature of the teacher's work and the necessity to be near pupils and parents; that a violation of that requirement would constitute a ground for dismissal, but in the absence of proof that the school board passed any such rule or regulation as a matter of general school policy, non-residence itself would not warrant the board's action.

In *Sinton's Case,* 151 Pa. Superior Ct. 543, 30 A. 2d 628, the board had passed a resolution requiring all professional employes to be bona fide residents of the school district. It was admitted there that the resolution was reasonable and within the power of the school board. See, also, In re: *Sinton Case,* 154 Pa. Superior Ct. 233, 35 A. 2d 542.

In *Ganaposki's Case,* 332 Pa. 550, 2 A. 2d 742, which arose prior to the Teachers' Tenure Act of 1937, a teacher of physical education was dismissed by the board for refusal to follow the reasonable instructions and rules of the board requiring him to coach basketball. The court held that when a teacher is employed to teach he may be assigned to such teaching duties for which the board thinks he is qualified, and if he refuses to obey such directions he is guilty of " 'wilful and persistent negligence' for which he may be dismissed ...... The School Code provides that he must 'teach' under the authority of the board; the refusal to do so is a direct violation of the Code and his contract ......"

No one can successfully question the right of school

boards to adopt and enforce such reasonable rules and regulations governing the management of their affairs and the conduct of teachers and other employes as they may deem proper: *Ambridge Borough School District v. Snyder,* 346 Pa. 103, 107, 29 A. 2d 34. If the school board was shorn of that authority it often times would be in a helpless position. But we do not mean to hold that a violation of a rule forbidding married female teachers to continue even if properly enacted, would be valid ground for suspension.

The causes for dismissal are likewise specifically enumerated under section 2(a) of the 1937 act, supra, and certain procedural formalities must be followed including preferring of charges and hearings: *Bragg v. Swarthmore School District et al.,* 337 Pa. 363, 367, 11 A. 2d 142. In this case no charges were preferred nor a hearing had. The effect of the board's action is tantamount to a dismissal as a marriage is presumptively permanent. Appellants argue that following the rule of *Jones v. Kulpmont Borough School District,* supra, it may *dismiss* a female teacher under section 2(a) of the 1937 act, as amended, as an infraction of the rule regarding married teachers constitutes "persistent negligence" or "persistent and wilful violation of the school laws." This argument does not apply. Until appellants establish a valid rule passed by formal action of the board that question is not properly before us.

Assuming for the moment that a valid rule was established and defendant's offer of proof was improperly rejected, we do not think the violation of a rule forbidding married female teachers to continue is enough ground for termination of the contract under the Teachers' Tenure Act of 1937, as amended by the Act of 1939, in this state. That is a matter of legislative, rather than judicial, action. A violation of the rule attempted to be invoked by the appellants would

not come within any commonly accepted meaning of the term "persistent negligence." It can hardly be conceived that the legislature left such important and much discussed matters as suspension or dismissal of married female teachers to the discretion of each school board in the state. To give such a broad interpretation to section 2 of the Tenure Act, as amended, would in our judgment amount to judicial legislation.

Why should a female teacher be suspended or dismissed for getting married? It is not immoral or improper to enter into that relationship, which is encouraged and protected by public policy. Nor does marriage bear any direct relation to a teacher's fitness or capacity to do her work capably. The inefficiency, negligence, immorality, etc. of a teacher is entirely another matter. We are aware that in other jurisdictions local rules of the school district dismissing a female teacher because of marriage under the particular Teachers' Tenure Act of the State involved have been sustained. In a leading case, *McQuaid v. State ex rel Sigler,* Ind., 6 N. E. 2d 547, 118 A. L. R. 1079, the contract stipulated that marriage by the female teacher would operate to terminate the contract. The statute of Indiana provides for dismissal for specific causes such as incompetency, neglect of duties, etc. and then adds the significant phrase "or other good and just cause." In that case a well reasoned dissenting opinion was written by Judge Treanor. See Annotation 118 A. L. R. 1092 ff. for a further discussion of this question.

In *Houghton v. School Committee of Somerville, Mass.,* 28 N. E. 2d 1001, a female teacher was dismissed because she was married and "for good cause" in the manner provided by statute. The provisions of the statutes involved in those cases are dissimilar to ours and in no event control us.

Previous decisions in this state have indicated that marriage of a female teacher is not a ground for termi-

nation of her contract under the Tenure Act. In *Colyer v. Granville Twp. School District et al.,* 331 Pa. 435, 200 A. 40, the teachers resigned after the effective date of the Teachers' Tenure Act of 1937, supra, because of a rule of the school district that contracts of married woman teachers would not be renewed. They sought to cancel their resignations and renew their contracts by petition for alternative writs of mandamus. The Supreme Court affirmed the granting of the writs on the ground that they were employed under existing contracts when the Tenure Act of 1937 became effective. While the validity of the board's rule was not discussed by the Supreme Court there is a clear implication that such a rule was no defense to the writ under the Tenure Act.

Recently we held in *Brown's Case,* 151 Pa. Superior Ct. 522. 30 A. 2d 726, that pregnancy of a married woman teacher warranted her dismissal, due to her inability to perform her duties, falling within the term "incompetency" as used in section 2(a) of the Tenure Act, as amended, 24 PS §1126. We there stated, p. 528: "We must bear in mind that Mrs. Brown was not being discriminated against because of her marriage, which occurred long prior to the events we have recited. Her dismisal was due neither to that fact nor to her legitimate pregnancy, but because she became incompetent due to her physical incapacity to discharge her duties."

Judgment of the court below is affirmed.