ROWLEY, J.,
— This appeal, by the Board of School Directors (board), of the Monaca School District (district), from an order of the Secretary of Education (secretary), directing the reinstatement of James B. Laughlin as a professional employe, presents the question whether section 510 of the Public School Code of March 10,1949, P. L. 30, art. 5, sec. 510, 24 PS §5-510, authorizes a local school district to prohibit, by rule or regulation, outside employment of professional employes between the hours of midnight and 6 a.m. on regularly scheduled school days. We have concluded that it does not.
*448 On June 16, 1967, Mr. Laughlin was employed by the district as a professional employe with tenure. He was assigned to teach mathematics and spelling in the fifth and sixth grades at one of the elementary buildings in the district. On May 9, 1968, Mr. Laughlin obtained additional employment with the Pittsburgh Tool Steel and Wire Company as a swager pointer on an hourly rate basis. His regular work shift is from 11 p.m. to 7 a.m. with that company. He has continued that employment at all times relevant to the decision of this case. On August 21, 1969, the board adopted a resolution regulating “part-time” employment by its professional employes. On September 18, 1969, the regulation was amended to provide that “no professional employee shall be employed between the hours of midnight and 6:00 A.M. preceding a regularly scheduled school day”. Mr. Laughlin received notice of both the original regulation and the amendment of September 18, 1969. It was directed that the regulation, as amended, become effective on October 1, 1969. Mr. Laughlin requested an extension of the effective day of the regulation and the board granted him an extension to October 31, 1969. His request for a further extension was refused by the board. On November 6, 1969, Mr. Laughlin was notified, in writing, that as a result of his failure to comply with the “part-time” employment regulation, his contract would be terminated for (1) persistent negligence, and (2) persistent and willful violation of the school laws of the Commonwealth. The charges were filed pursuant to section 1122 of the code, as amended. Following a hearing, the board, on November 26, 1969, unanimously voted to terminate Mr. Laughlin’s contract. An appeal was taken by Mr. Laughlin to the Secretary of Education. The secretary, after hearing, reversed the decision of the board and ordered that Mr. Laugh *449 lin be reinstated without loss of pay. From that decision of the secretary, an appeal was taken by the board to this court. A hearing de novo has been held and the parties, through their counsel, have filed extensive briefs.
Although not discussed by the parties, it is well to clarify at the outset the scope of our review on this appeal. Prior to August 24, 1963, a school district did not have the right to a hearing de novo upon its appeal to the Court of Common Pleas from a ruling of the Superintendent of Public Instruction. Under such circumstances, it was held that the Court of Common Pleas should inquire to determine only if there had been a manifest abuse of discretion or an error of law on the part of the superintendent: Thall Appeal, 410 Pa. 222 (1963); Tassone v. Redstone Township School District, 408 Pa. 290 (1962). Also see Pease v. Millcreek Township School District, 412 Pa. 378 (1963).
However, on August 24, 1963, section 1132 of the code was amended by inserting therein a provision authorizing the Board of School Directors to request a hearing de novo. It is our opinion that it was the intention of the legislature, in adopting such an amendment, to confer upon school districts the same rights as those previously enjoyed exclusively by professional employes in the taking of an appeal to the Court of Common Pleas. In other words, where a hearing de novo is held now, upon an appeal by the board, the court “shall make whatever order it considers just. . . This means that we are to make a complete review of the evidence presented on the issues raised by the parties on the appeal and make an order based upon the facts and law presented. The board in this case having requested a de novo hearing, and such a hearing having been held, we are not restricted to a determination of whether “there was a manifest abuse of dis *450 cretion or an error of law on the part of the superintendent.”
Although several questions have been briefed and argued by the parties, we believe that the first question, and the one that is determinative of the appeal, is the extent of the power conferred by the legislature, under section 510 of the code, on school boards to regulate the conduct of professional employes. At the outset of our consideration of this question, it is well to keep in mind that local school districts in Pennsylvania have only such duties and powers as are specifically or by necessary implication delegated to them by the legislature. The people of Pennsylvania, through the Constitution, entrusted the legislature with the duty of maintaining and operating the public school system. This duty has been delegated, in some respects, by the legislature to local school districts and local school boards throughout the Commonwealth: Smith v. Darby School District, 388 Pa. 301 (1957). In other words, the local school districts are merely agencies of the State legislature and have been created by it for the purpose of carrying out its constitutional duty. The local school districts derive all of their powers from the statute enacted by the General Assembly: Slippery Rock System v. Franklin Township District, 389 Pa. 435 (1957). One of the best and most comprehensive statements of the nature of a local school district and the extent of its power is contained in the opinion of the Supreme Court of Pennsylvania in Barth v. Philadelphia School District, 393 Pa. 557 (1958). There the court said, commencing at page 561:
“. . . Furthermore a worthy objective does not justify the action of a School District or a public body, which has no fundamental or inherent powers of Government, unless that action is authorized by the Constitution or by an Act of the Legislature.
“A School District is not a Constitutional body. . .
*451 “It is clear, we repeat, that a public school or a public school district is not a constitutional body.
“A School District is a creature or agency of the Legislature and has only the powers that are granted by statute, specifically or by necessary implication:
“. . / “First, it should be remembered that our entire school system is but an agency of the State Legislature — maintained by them to carry out a constitutional duty. . . The school system, or the school district, then, are but agencies of the state legislature to administer this constitutional duty. . . Within that school system, a school district is an agency of the State, created by law for the purpose of promoting education, deriving all of its powers from the statute, and discharging only such duties as are imposed upon it by statute. . .” ’
“. . . They are not municipal corporations:. . . They possess only the administrative powers that are expressly granted by the central government or inferred by necessary implication. . .
“The Public School Code minutely details in approximately 270 pages, the powers, functions and duties of a School District ... A study, nay a reading, of the Public School Code demonstrates that the Legislature unquestionably intended and provided that the School District could possess and exercise only those powers and functions detailed in the Code, and that public school funds could be used only in the manner and for the purposes which are expressly or by necessary implication provided for in this detailed Act.
“. . . We may add that a very worthy objective does not justify the action of a public body, such as a. public school district, which has no inherent powers of government, unless that action is authorized by the Constitution or expressly or by necessary implication by an Act of the Legislature.”
This characterization of the schdol board’s nature *452 and extent of its power was recently approved in Chartiers Valley Joint Schools v. Allegheny County Board, 418 Pa. 520 (1965). Also, the former President Judge of this court, the Hon. Morgan H. Sohn, in Beaver Area School District v. Beaver Borough, 10 D. & C. 2d 733 (1957), at page 737, said:
“It is therefore obvious that the rights and powers of a school district, in the administration of a system of public schools, are administrative and are limited to such powers as are granted by the Constitution and legislature or such powers as are inferred by necessary implication.” (Italics supplied.)
Thus, the threshold question in the case before us is whether the legislature has expressly or by necessary implication delegated to local school districts the power to prohibit outside employment by its teachers, between midnight and 6:00 A.M., on regularly scheduled school days. So far as we have been able to ascertain, this precise question has never been determined in Pennsylvania.[1]
The board relies on section 510 of the Public School Code of March 10, 1949, P. L. 30, art. 5, sec. 510, 24 PS §5-510, as its authority to enact the regulation in question. Section 510 provides, in relevant part, as follows:
“The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding. . . the conduct and deportment of all. . . teach *453 ers. . . during the time they are engaged in their duties to the district, . . (Italics supplied.)
The board argues that the prohibition of other employment between the hours of midnight and 6 a.m. on regularly scheduled school days has a direct bearing upon the conduct and deportment of teachers in the performance of their duties to the district. This may well be. However, unless the power to regulate the conduct of professional employes in such a manner is specifically granted or is necessarily to be implied from the language of section 510 of the code, it is beyond the power of the board to regulate. The phrase, “during the time they are engaged in their duties to the district,” is a limitation upon the board’s right to regulate the conduct and deportment of teachers. That regulation must be confined to the time the employe is “engaged” in his or her performance of the duties properly assigned to him by the board. The legislature did not authorize the regulation of conduct which might affect the employe’s performance of his duties. If we were to so hold, then the phrase emphasized would be meaningless.
We conclude, therefore, that the legislature intended precisely what it said; that the regulation of teacher’s conduct was limited to those times when they were actually engaged in their duties for the school district. The legislature did not extend to the board the right to regulate the teacher’s conduct at other times.
The board cites Kaplan v. Philadelphia School District, 388 Pa. 213 (1957), as authority for the proposition that a teacher’s conduct outside the classroom may have a bearing on his right to teach. However, the issue involved in Kaplan was whether an employe was entitled to collect his salary for the period of time between his suspension by the school superintendent and his ultimate discharge by the board. The court *454 was not concerned in that case with the power of the board to adopt a particular regulation.
The board also cites the cases of Jones v. Kulpmont Borough School District, 333 Pa. 581 (1939), and Sinton Case, 154 Pa. Superior Ct. 233 (1944), for the proposition that the board has the power to regulate the place of a teacher’s residence and that being so the board also has the right to regulate or prohibit his employment between the hours of midnight and 6 a.m. However, an examination of the decision in Jones, supra, discloses that the statement of the court to the effect that a residence requirement would be reasonable was not necessary to the decision. It appeared that the board had, in fact, not made any such regulation in that case. Therefore, the teacher could not be dismissed for violation of a rule which did not exist. Several years later, in Sinton, supra, the discharge of an employe for failure to comply with a residence regulation was upheld. The Superior Court cited the Jones case as authority. However, the Sinton case was before the court on two occasions, the first being reported in 151 Pa. Superior Ct. 543 (1943). There, it appeared that the teacher conceded in her argument that the board, in fact, had the power to enact such a regulation and that the regulation enacted by the district was reasonable. Therefore, the question of whether the board actually had such power was not placed in issue in that case as it has been in this case. The board also cites, as authority, the case of Ambridge Borough School District’s Board of School Directors, Beaver County v. Snyder, 346 Pa. 103 (1942), which involved a maternity leave of absence regulation. The regulation involved in that case, however, required the teacher to take a leave of absence from her position in the classroom during the later part of her pregnancy and a period of time thereafter. Such a regulation, we believe, does directly involve the time that the teacher is en *455 gaged in her regular duties to the district. Moreover, an examination of the opinion in that case discloses that once again the teacher did not question the reasonableness of the regulation involved. Her argument there was that her violation of the regulation was justified under the facts. Once again, that is an entirely different issue than that presented by the parties in this case. Here, Mr. Laughlin, the appellee, has directly challenged the power and authority of the board to make the regulation which formed the basis of his dismissal.
We are of the opinion that the decision of the Supreme Court of Pennsylvania in Pease v. Millcreek Township School District, 412 Pa. 378 (1963), supports our conclusion in this case. The board argues that Pease was decided under section 511 of the code. That is true. However, we do not believe that that distinction justifies a contrary result in this case. On the contrary, we axe of the opinion that sections 510 and 511 are closely related and that the philosophy and principles expressed by the Supreme Court in Pease are equally applicable to cases arising under section 510 of the code. Under section 511(c), the legislature has given the board of school directors authority to assign professional employes to serve in any capacity in connection with activities “related to the school program.” In Pease, the Supreme Court recognized that the teacher’s duties and obligations do not end at the classroom door at the conclusion of a class. They recognized that supervision of, and participation in, extra-curricular activities are a very important part of the teacher’s duties, so long as those activities are “directly related to the school program.” The court held there, however, that a voluntary bowling program participated in by students at their own expense, after school hours and off school property, was not “directly related to the school program.” Therefore, it was held that the board had no authority to direct the employe *456 to supervise that particular program. We are of the opinion that a correct reading of section 510 of the code is that the board may regulate the conduct and deportment of employes during those times that they are actually engaged in teaching and such times as they are assigned to school related activities under section 511. However, the board has no power to assign employes to nonschool-related activities and cannot regulate their conduct when they are not so engaged.
The board argues that the regulation is necessary to the proper management of the school’s affairs and has a direct bearing upon the performance, by the employes, of their duties to the district. As we understand the board’s argument, it is to the effect that the board is helpless, if it does not have the power to enact the regulation in question, to assure the students of the district a quality teaching performance in the classroom. However, the board is not without a remedy in the event a teacher’s outside activities have an adverse influence on his or her ability to teach or their performance in the classroom. Under section 1122 of the code, as amended, the board has the power to terminate the contract of any professional employe for incompetency. If, in fact, an employe is rendered incompetent by outside activities which dissipate his or her energies and prevent him from presenting to the students entrusted to his care the full degree of professional competence to which they are entitled, the board may, and should, proceed under section 1122 to seek the termination or dismissal of that employe. Thus, it is not “necessary” to conclude that the legislature in section 510 authorized the board to regulate an employe’s activities during times that he or she is not engaged in the performance of their duties to the district, merely because such conduct may have an influence on the employe’s ability to perform those duties. In the latter *457 event, the board is provided, by the legislature, with an appropriate and effective remedy.
Thus, we conclude that the regulation of the board in this case prohibiting Mr. Laughlin’s extra employment between the hours of midnight and 6 a.m. was not authorized by the legislature. Therefore, since the board had no authority or power under the School Code to prohibit such employment, Mr. Laughlin’s continued employment between those hours does not justify or support the board’s termination of his contract. For this reason, it is not necessary to discuss the other questions raised by the parties in this proceeding. However, in conclusion we wish to point out that, based upon a review and study of the entire record in this case, the members of the board of school directors acted only after due deliberation and for proper and commendable motives. There is no evidence in this record that the board acted arbitrarily or out of spite. Moreover, there is no evidence that the board acted “rashly.” What the Supreme Court said in Pease, supra, applies with equal validity to the facts of this case, and we, therefore, adopt their statement, as follows, as being applicable to the Directors of the Monaca School District:
“Our review of this record clearly reveals that this Board acted patiently, with restraint and in the utmost of good faith. Its error lay in an unintentional excession of the power. . . granted by the Public School Code. Our refusal to sustain its dismissal of [Laughlin] in no manner reflects on the capability, the integrity or good purpose of the members of the Board.”
All we decide at this time is that the attempted regulation of an employe’s conduct was not authorized or justified under section 510 of the Public School Code. In attempting to make such a regulation, the board exceeded its authority granted to it by the legislature. *458 This being so, even though complete and adequate rest for the teacher preceding his appearance in class may be desirable and necessary, the regulation cannot be sustained.
For these reasons, we make the following
ORDER
Now, May 7,1971, the appeal of the Board of School Directors of Monaca School District is dismissed. The order of the Secretary of Education is affirmed. It is directed that James B. Laughlin be reinstated without loss of pay.

 In Brenckle et al. v. Township of Shaler, July Term, 1970, no. 965 (Allegheny County, 1970), the court upheld the validity of a regulation which prohibited “moonlighting” by policemen in a first class township. However, that decision is based upon an interpretation of the First Class Township Code, which differs materially from the School Code. Therefore, the problem in this case differs from that before the Allegheny County Court.