**WESTERN AIR LINES, INC., a corporation, Plaintiff,**

v.

**FLIGHT ENGINEERS INTERNATIONAL ASSOCIATION, AFL–CIO, etc., et al., Defendants.**

No. 510–61.

United States District Court
S. D. California,
Central Division.

June 13, 1961.

Darling, Shattuck & Edmonds, Los Angeles, Cal., for Western Air Lines.

Brundage, Hackler & Flaum, Los Angeles, Cal., for Flight Engineers International Ass'n, AFL–CIO.

HALL, Chief Judge.

The matter is before the Court on the plaintiff's motion for temporary injunction to restrain the defendant Union and the individual defendant members thereof from picketing its places of business and otherwise interfering with the normal operations of its business by picketing and other forms of coercive action such as communicating with plaintiff's suppliers and their employees and with orginating places of business for the plaintiff, like travel agencies.

The defendants did not file any counter-affidavits, and hence the statements of fact in plaintiff's affidavits must be taken as true, as well as the factual allegations in the complaint. In addition thereto, both parties agreed

that the Court take judicial notice of the files, records and proceedings in case No. 362–61.

In that case, the Union (defendant here) was plaintiff, and sought the processes of this Court to compel Western Air Lines (plaintiff here) to discharge the persons hired by Western to replace the flight engineers who had walked out on February 17, 1961, which, if granted, would have resulted in rehiring the displaced flight engineers. After the flight engineers of Western walked out on February 17th, Western continued operation of its air line so far as possible, replacing the flight engineers with pilot-trained persons, which Western claims is in accordance with the negotiated contract of April 11, 1958, between the Union and Western, conceded by both parties to be still in force pending the negotiation of a new contract.

Injunctive relief was denied by this Court on the ground that the matter involved in case No. 362–61 was a "minor dispute" under the Railway Labor Act [45 U.S.C.A. § 151 et seq.], and that the parties had not exhausted the preliminary procedures required by their own negotiated contract and by the Railway Labor Act. See transcript of oral opinion in case No. 362–61 for fuller discussion.

The roots of the differences between the parties lie deep in the developments over the past several years in the air-passenger-carrying industry. The history of that development, as effecting flight engineers and air pilots, is set forth in detail in Exhibit 6 which is the report of a committee appointed under Section 2, ninth, of the Railway Labor Act [45 U.S.C.A. § 152, Ninth] in a representation dispute between the Air Line Pilots Association and the Flight Engineers Association, whose members were employed by United Air Lines. Western was not a party to that dispute. That report was released February 6, 1961. It pointed out the necessity, in the operation of up-to-date aircraft carrying many persons, of each person in the cockpit being able to do the work of every other person in the cockpit in an emergency, including the piloting of the aircraft, and concluded that all persons in the cockpit constituted one "craft or class for purposes of representation and collective bargaining under the Railway Labor Act, and should be voted together on one ballot for the purposes of representation under Sec. 2, ninth, of the Railway Labor Act as amended."

It is unnecessary to recite all of the facts as alleged in the affidavits and the complaint and as judicially noticed in case No. 362–61, but a statement of certain events, in addition to those outlined above, is essential in understanding the problem.

In protest of the above-mentioned decision of February 6, 1961, by the National Mediation Board, the flight engineers on all air lines over the United States walked out on February 17, 1961. Western Air Lines was the only one which attempted to operate. It specifically requested each flight engineer to report for work at the regular time that he was to be called for duty. Each one refused, and was replaced by a pilot-trained employee. The other air lines continued struck until the Secretary of Labor of the United States issued a statement on February 21, 1961, after a conference with the struck carriers, except Western, wherein he pointed out that the decision of the National Mediation Board was by its terms limited in its nature to United Air Lines, and that "With respect to the decision in its limited application to United Air Lines, the Board is an independent agency duly established by law, whose rulings cannot be changed by the President, myself or anyone in the Executive Branch of Government. We are a government of laws and not of men. If the decision is considered erroneous, it can be challenged only in the courts."

Many flight engineers are not pilot-trained, and the statement also pointed out the fears of flight engineers that their jobs would be in jeopardy by the decision of the National Mediation Board.

The flight engineers, by walking out, apparently regarded that decision as presaging the same conclusions on other air lines when and if the question was raised as to each air line. Western apparently took the same attitude by immediately adopting the policy of hiring only pilot-trained employees to replace those who refused to go on their jobs when requested.

The statement by the Secretary of Labor was followed by an order of the President establishing a commission to inquire into the situation and make a recommendation to the President, and to assist in achieving an amicable settlement and agreement. Both parties to this controversy concede that that order was not an order made under the Railway Labor Act, 45 U.S.C.A. § 160, providing for an emergency board. The parties to the action concede that both of them would be at liberty to disregard the order of the President. The statement of the Secretary of Labor requested the striking employees, on all air lines except Western, to return to work, and they did.

On February 23, 1961, an amendment was made to the Presidential Order of February 21, 1961, which included Western Air Lines. By that time, Western had requested each individual employed as a flight engineer to report for duty, and each had refused and their employment had been terminated. On or about April 5, 1961, those employees who replaced the flight engineers, designating themselves as Second Officers, filed a request with the National Mediation Board asking that a labor organization called the Second Officers Association, be certified as a bargaining agency for the Second Officers employed by Western, who had replaced the flight engineers.

It should be pointed out that the contract of April 11, 1958, between the flight engineers and Western expired January 1, 1961, but that both of the parties concede it is still in force pending negotiation of a new contract, and both parties are engaged and have been engaged in the preliminary procedures prescribed by the Railway Labor Act for the negotiation of a new contract.

Thus there is a "minor dispute" between the parties concerning the interpretation of the existing contract. There is a "major dispute" in the negotiation of the new contract between the flight engineers and Western Air Lines, and now a third "major dispute" concerning representation by the Second Officers Association, is either existing or is incipient.

All of the cases cited by each of the parties have been examined.

It is unnecessary, and would serve no useful purpose, to parade an analysis of all of them in this memorandum because I regard the controlling principles to be stated in the hereinafter cited cases.

■ Brotherhood of Railway Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, makes it clear that any minor dispute existing between the flight engineers and Western must first proceed through the preliminary processes provided by the Railway Labor Act and by contract between the parties themselves, before injunctive processes of the Court can be invoked. See oral opinion of this Court in case No. 362-61.

General Committee, etc. v. M. K. T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76, involved a major dispute. The court there held that the processes of the Railway Labor Act were exclusive; that the District Court was without power to resolve the controversy; and that the Railway Labor Act substituted the procedure set forth therein for the previously used sanctions of publicity and public opinion. The court in that case quoted with approval from T. & N. O. R. R. v. Brotherhood, 281 U.S. 548, 50 S.Ct. 427, 433, 74 L.Ed. 1034, where Chief Justice Hughes said: "All the proceedings looking to amicable adjustments and to agreements for arbitration of disputes, the entire policy of the act, must depend for success on the *uncoerced action of each party* through its own representatives to the end that agreements satisfactory to

both may be reached and the peace essential to the uninterrupted service of the instrumentalities of interstate commerce may be maintained." (Italics supplied.)

In Order of Railroad Telegraphers, etc. v. Chicago N. W., 1960, 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774, the Supreme Court held that there was clearly a major dispute involved. The trial court had granted a temporary injunction but declined to grant a permanent injunction. On appeal, however, the Court of Appeals did grant the permanent injunction. The Supreme Court affirmed the trial court in granting the temporary injunction, but reversed the holding of the Court of Appeals in granting the permanent injunction, on the ground that a permanent injunction was prohibited by the Norris-LaGuardia Act [29 U.S.C.A. § 104].

■ In view of this holding by the Supreme Court that the District Court has power to grant a temporary injunction, I feel that I am bound by the law in that case rather than the flat statement in Butte, Anaconda & Pacific Ry. Co. v. Brotherhood, 9 Cir., 1959, 268 F. 2d 54, certiorari denied 361 U.S. 864, 80 S.Ct. 124, 4 L.Ed.2d 104, "that the Norris-LaGuardia Act prohibits the issuance of an injunction in Railway Labor cases involving 'major disputes.'" Moreover, in the Butte case, the Employer Railroad had refused to proceed with mediation proceedings under the Railway Labor Act. That is not true in this case as both parties are proceeding under the Railway Labor Act and their contract to settle their minor dispute, and under the Railway Labor Act to settle the major disputes which exist between them.

The principal contention of the defendants here is that the plaintiff has not exhausted "every reasonable effort" [45 U.S.C.A. § 152, First] to settle the dispute between the parties, in that, the request of the Secretary of Labor and the Presidential Order requesting the air lines to re-employ the flight engineers was a reasonable means of settling the dispute, and that inasmuch as Western did not re-employ the flight engineers as requested, the Norris-LaGuardia Act comes into force and prohibits the use of any injunction. The defendants rely principally upon Brotherhood of Railroad Trainmen v. Toledo, P. & W. R. Co., 1944, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534. But in that case, as in so many others cited by the parties, the employer had flatly refused to comply with the terms of the Railway Labor Act in attempting to settle the dispute. As above pointed out, that is not the case in this instance, and I do not regard that case as controlling here.

To hold with the defendants' contention in this respect, would compel the conclusion that not only the means and methods provided by the Railway Labor Act, but also the means and methods provided by the negotiated contract between the parties, are *unreasonable*. It would also circumvent the contract of April 11, 1958, between the parties, in the method they chose to settle the dispute, as well as the decree of this Court in case No. 362–61.

The plaintiff here is in full compliance with the procedures prescribed in the contract between the parties, and also by the Railway Labor Act.

It is therefore my view that the plaintiff has made and is making *"every reasonable effort"* to settle the dispute between the parties as required by 45 U.S. C.A. § 152, First, and is entitled to the temporary injunction, and that if the same is not granted, plaintiff will suffer irreparable injury.

The plaintiff will prepare findings, conclusions and order temporarily restraining defendants until the further order of the Court, or until the procedures and processes of their contract and the Railway Labor Act have been concluded, whichever first occurs.

A bond will be required of plaintiff, but the amount thereof will be fixed on hearing after notice by either side.