Cerra *v.* East Stroudsburg Area School District.

666

Argued October 7, 1971, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer and Rogers.

*Peter J. O'Brien,* for appellant.

*Alex L. Bensinger,* with him *Bensinger and Pentz,* P. A., for appellee.

OPINION BY JUDGE WILKINSON, December 21, 1971:

Appellant, a tenured teacher in appellee school system, was dismissed because she failed to resign her position when she passed the end of her fifth month of pregnancy. Such resignation was required by a regulation of appellee. Appellant challenged the dismissal and had a hearing before the Board. The dismissal was sustained by the Board and appellant filed a Petition for Appeal with the Secretary of Education. With the exception of a brief stipulation, the case was submitted to the Secretary of Education on the record of the hearing before the Board. The Secretary of Education sustained the dismissal on the grounds that the regulation requiring resignation at the end of the fifth month of pregnancy was not unreasonable and, therefore, was valid under Section 510 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, 24 P.S. §5-510.

Appellant filed a Petition for Appeal to the Court of Common Pleas of Monroe County and again relied on the testimony of the hearing before the Board. After a well-reasoned opinion which dealt in detail with all the arguments of the appellant, the court below affirmed the decision of the Secretary of Education. This court must do the same.

The Board, the Secretary of Education, and the court below, relying on the testimony offered at the Board hearing and an analysis of the decided cases, as well as the School Code, all found that the regulation of the Board requiring resignation after the end of the fifth month of pregnancy was reasonable. We concur. Indeed, in the record before this Court there is no evidence to the contrary. Appellant relies on the argument that pregnancy is an illness, the same as any other illness, and it is, therefore, discriminatory to classify it otherwise. However, appellant's own medical expert testified exactly to the contrary:

"A. Well, the current thinking is that pregnancy is a physiological condition and not an illness, and we encourage patients to carry on their normal activities throughout the entire pregnancy.

"Q. Is this your personal viewpoint?

"A. This is not only my viewpoint, but the viewpoint in the field of Obstetrics and Gynecology in general." Record at 66a. The factual basis used by the Board to support a separate regulation for pregnancy was the testimony of its Elementary Principal and its School Superintendent. Both testified that their experience granting maternity leaves in the case of pregnancy was unsatisfactory. Indeed, in one year when appellee expected four teachers who had been on maternity leave to return, all four decided, within a week before school opened, not to return, thereby creating a critical shortage of teachers. Appellant offered no testimony to contradict this evidence, nor did she offer any evidence that good management called for treatment other than this regulation.

Appellant has not directed our attention to any Pennsylvania decisions requiring pregnancy to be treated as any other illness and we have found none. On the other hand, appellee, the Secretary, and the court below relied on the decision of our Supreme Court, affirming the Superior Court's reversal of the lower court and the Superintendent of Public Instruction, in *Brown Case*, 347 Pa. 418, 32 A. 2d 565 (1943), squarely holding that a teacher who is incapacitated by virtue of pregnancy is not entitled to a sick leave and may be required to resign. *See also Ambridge Borough School District's Board of School Directors v. Snyder*, 346 Pa. 103, 29 A. 2d 34 (1942), where the court affirmed the dismissal of a teacher for refusing to abide by a Board regulation that all pregnant teachers take a maternity leave even though the pregnant teacher there involved

was on a year's sabbatical leave of absence and, therefore, no question of competency was involved.

Our attention has been drawn to two conflicting U. S. District Court cases, one holding that a pregnant teacher could not be required to take a maternity leave, *Cohen v. Chesterfield County School Board,* 326 F. Supp. 1159 (D.C.E.D. Va. 1971), and another holding to the contrary, *LaFleur v. Cleveland Board of Education,* 326 F. Supp. 1208 (D.C.N.D. Ohio 1971). In view of the decisions of our Supreme Court, neither of these cases is persuasive.

It is interesting that in this case, where the appellant would have the school administrators make an individual judgment on the physical capacity and competence of each pregnant teacher, her physician admitted in his testimony at the hearing before the Board that he had *knowingly* submitted a false statement as to the term of her pregnancy in order to persuade the school administrators to keep her on.

In view of our conclusion that the regulation is reasonable, it is not necessary to consider the question of whether the fact of six months' pregnancy in itself is sufficient to constitute incompetency, i.e., physical incapacity to perform properly all the duties incumbent on a teacher.

The very able Secretary of Education, with many years of distinguished service in the administration of the Department of Education, a great institution of higher learning, and state government in general, after a thorough discussion of the testimony, very properly did not express his opinion on the wisdom of the regulation, but decided it was a reasonable one and within the Board's authority. He concluded his discussion with the following statement: "In view of the number of appeals received by the Secretary of Education based on discharge because of violation of maternity and other regulations, the following general observation is made.

We note the lack of uniformity in the regulations as adopted by the many school boards. We do not suggest or urge the adoption of uniform school regulations throughout the Commonwealth, because we realize that each board adopts rules based on the problems peculiar to its own district. We suggest, however, conferences between boards that might produce a meeting of the minds. Such meetings could effectuate uniform changes and amendments for all the boards functioning in any one of the new intermediate units that will be created in the near future. We have heard argument presented on the concept of equality of the sexes, the policies of the Human Relations Commission relevant thereto, and the new Women's Liberation Movement. These are worthy of consideration in the deliberations of the school boards as hereinbefore recommended. Our comments are not to be considered as a criticism of existing regulations, but merely a desire, as we see it, for the need for some degree of uniformity, with due consideration for present day concepts." Record at 156a.

Affirmed.

Judge CRUMLISH concurs in result only.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. In *LaFleur v. Cleveland Board of Education,* 326 F. Supp. 1208 (N.D. Ohio 1971), it was held that a school board regulation requiring *leave of absence* of pregnant school teachers was reasonable and did not unconstitutionally discriminate against women whose condition was attendant to their sex. I am in full accord. *See Cohen v. Chesterfield County School Board,* 326 F. Supp. 1159 (E.D. Va. 1971), where similar regulation was held to be unconstitutional.

However, here we are dealing with a school board regulation requiring complete *termination of employ-*

*ment* of pregnant school teachers. My research indicates that this case presents a question of first impression in this Commonwealth. The majority cites two Pennsylvania cases but both seem to me to be inapposite. In *Brown Case,* 347 Pa. 418, 32 A. 2d 565 (1943), the school board had no regulation dealing with the situation of a female employee who became pregnant. More significantly to the instant case, *Brown* held that a teacher who is incapacitated due to her pregnant condition is not entitled to a sick leave. The Court held that her dismissal was due to her physical incapacity to discharge her duties which constituted incompetency. Here the testimony failed to substantiate a charge of incompetency but rather proved that appellant was fully competent to perform her duties. The Secretary of Education specifically so found and stated that "[i]t is evident that the only basis for discharge was the continuation of teaching, contrary to the Board's regulation relative to pregnancy and its requirement of termination of employment." In *Ambridge Borough School District's Board of School Directors v. Snyder,* 346 Pa. 103, 29 A. 2d 34 (1942), the Board's regulation provided that all pregnant teachers take a *maternity leave of absence* and the refusal to do so was just ground for dismissal. The regulation was held to be reasonable and this holding is consistent with *LaFleur v. Cleveland Board of Education, supra,* with which I am in accord.

However, our instant problem is the reasonableness of a regulation that *terminates employment* because a teacher becomes pregnant rather than one that requires the teacher to take a *leave of absence.* The two cases cited by the majority do not assist me in resolving the problem.

Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, as amended, 24 P.S. §11-1122, provides in pertinent part: "The only valid causes for termination of a contract heretofore or hereafter

entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe . . . ."

Here appellant's pregnant condition was established not to have resulted in incompetency and the lower court did not conclude otherwise. Accordingly, I must conclude that the School Board was without power or authority to *terminate* the contract of a professional employee with tenure by a regulation dealing with the situation of a female employee who becomes pregnant. I believe *Goff v. Shenandoah Borough School District,* 154 Pa. Superior Ct. 239, 35 A. 2d 900 (1944), supports my conclusion. In *Goff* it was held that the marriage of a female teacher with tenure would not justify dismissal of the teacher, whether or not the marriage was in violation of a rule or regulation passed by the school board. In the absence of the factor of incompetency resulting from the physical condition of pregnancy, I can discern no real difference between a dismissal because one marries, held improper in *Goff,* and a dismissal because one becomes pregnant.

I would sustain the appeal and direct appellant's reinstatement to her position with appellee School District.

---

DISSENTING OPINION BY JUDGE KRAMER:

I join in the dissenting opinion by Judge MENCER and add the following comments as additional reasons for my dissent.

Section 1 of the Fourteenth Amendment to the United States Constitution reads: "All persons born or naturalized in the United States, and subject to the

jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of any citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the law."* (Emphasis added.)

On July 17, 1967, the Appellee School District adopted the following resolution: "Resolved that henceforth maternity leaves of absence shall not be granted to employees of this school district; that any employee who becomes pregnant shall resign effective not later than the end of the fifth (5th) month of the pregnancy; . . ."

As I view the above regulation, and applying it to the facts of this case, I am of the opinion that the appellant's constitutional rights under the Fourteenth Amendment have been violated in that she was denied equal protection of the law.

It has been stated repeatedly that the guarantee of the equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances. *See Kentucky Finance Corp. v. Paramount Auto Exchange Corp.,* 262 U.S. 544, 67 L. Ed. 1112 (1923).

The Equal Protection Clause of the Fourteenth Amendment is a restriction upon the state governments and operates exclusively upon them and their agencies. The limitations created by the Fourteenth Amendment extend to all the departments of state government and to all instrumentalities by which and through which the state acts, including a school district. This constitutional right relates to all individuals, the least deserving as well as the most virtuous, and its protective scope forbids the government to select any

person or class of persons for the imposition of unreasonable or unlawful discrimination.

It is well settled, of course, that the state or its instrumentalities may validly classify persons and objects for the purpose of legislation, but if that classification is fanciful, capricious, arbitrary or unnatural, it must be held to be invalid. Whether or not the differences created by legislative classification are arbitrary, capricious and consequently illegal is a judicial question to be determined by the courts and not by the very governmental agencies creating the classification.

In a recent United States Supreme Court decision, *Reed v. Reed* (not yet reported), November 22, 1971, 40 *United States Law Week* 4013, Mr. Chief Justice BURGER states: "A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)." A classification may never be capricious or arbitrary; but rather must be reasonable, natural and have a rational basis. It is conceivable that a classification may legally discriminate if the essence of the discrimination is unobjectionable and is founded upon reasonable basis. The test is whether the object and purpose of the law or regulation bears a fair, substantial, natural, reasonable and just relation to the classification created. *See Allied Stores of Ohio, Inc. v. Bowers, Tax Commissioner*, 358 U.S. 522, 3 L. Ed. 2d 480 (1959).

It has also been said that a classification must be based upon substantial distinctions which make real differences and which are germane and pertinent to the purpose of the law. *See Kotch v. Board of River Port Pilot Commissioners*, 330 U.S. 552, 91 L. Ed. 1093 (1947) and *Asbury Hospital v. Cass County et al.*, 326 U.S. 207, 90 L. Ed. 6 (1945), *Terrace et al. v. Thomp-*

*son,* 263 U.S. 197, 68 L. Ed. 255 (1923), *Truax v. Corrigan et al.,* 257 U.S. 312, 66 L. Ed. 254 (1921).

No one has raised the question of discrimination between the sexes in this case; and it is not intended to be dealt with in this dissent.

I concede that a regulation made applicable to pregnant teachers, based upon testimony and evidence that the pregnant state alters their physiological or mental ability to carry out teaching and adjunct duties, could be a reasonable classification and not violative of individual constitutional rights.

A reasonable leave of absence for pregnancy causes me no concern. What does cause me concern in this case is the fact that this school district resolution terminates a teacher's right to future employment and carves out and creates a small sub-class. The resolution impliedly recognizes at least three classes, (1) those who have reached their fifth month of a pregnancy and must resign, (2) those who are already mothers and are unaffected by the resolution, and (3) those who are less than five months pregnant and are similarly unaffected by the resolution.

The instant appellant was the mother of a daughter at the time she was initially hired and at the time her rights as a professional employee vested under the provisions of the School Code. This regulation now reclassifies her in the fifth month of pregnancy of her second child and places her in a class distinct from all other teachers who may be mothers, who may not be pregnant, or who may be pregnant less than five months. Proof of the arbitrariness and capriciousness of this regulation is made when one views a number of possible variations. What rights has a teacher if she suffers a miscarriage during her sixth month of pregnancy after the termination of all her rights as a teacher in this particular school district? What are the rights of the teacher pregnant as a result of rape? What

are the rights of the pregnant unmarried teacher who plans to legally relinguish her rights to her child? In these situations, the reasons given by the school district in defense of the regulation are without merit.

There is testimony in this record concerning the psychological and physical abilities of pregnant teachers, however, there is not one word in this record which would make such testimony universally applicable to every pregnant teacher. Unless it can be shown that this regulation, in carrying out the purpose and objective of this school district, applies to every pregnant woman then the classification must fall.

The ultimate object and purpose of this regulation, as gleaned from the record, is to provide a better system of education for the children of this school district. My review of the record in this case leads me to conclude that it does not support the contention of the school district that this appellant would in any way hinder the education of the children of this school district if she were retained as a teacher until some point in time where she should be given a leave of absence to deliver her child, and after a reasonable time returned to her job as a teacher.

The school district complains that its experience with pregnant teachers is that a high percentage of them resign their positions after giving birth. The fact that this school district has experienced problems concerning pregnant teachers in the past is no indication that it suffers such problems with all pregnant teachers or with this particular teacher. In the absence of such proof the classification fails. The marriage of a school teacher is an analoguous situation creating problems for school boards. If a substantial percentage resign to become housewives, should we then permit a school district to terminate a teacher's position four months before her marriage? I certainly would not, and I be-

lieve that the command of the Equal Protection Clause forbids it.

In other words, if it were proven by this School District that *all* teachers more than five months pregnant fail to return to work after the delivery of their child, or if the record would indicate that *all* such pregnant teachers experience physical or psychological limitations which adversely affect the education of children, then and only then the regulation would be reasonable and deserving of affirmance. The record proves the contrary, for this teacher was a mother when she was hired. How the school district can now argue that she is incompetent after the birth of her second child strains my imagination. This school district has arbitrarily and capriciously promulgated a regulation affecting a very restricted class. Such regulation fails when tested by a functional analysis of the purpose and objective sought by such regulation when applied to the class. The classification attempted here is too restrictive. Appellant has been unconstitutionally discriminated against when compared with other teachers who are mothers (or who are not mothers) and not pregnant more than five months.

A regulation which would cause a mandatory leave of absence could be supported by a functional analysis of the purpose and object desired; but a complete termination of employment at the fifth month of pregnancy is unreasonable and arbitrary.

Although a regulation of the Pennsylvania Human Relations Commission is not binding upon this Court, I find support for the position I take in the regulation of that Commission found in the *Pennsylvania Bulletin*, December 19, 1970, Volume 1, No. 24, page 707, which reads as follows:

"(D) Maternity Leave.

"Employers must provide a female employee who becomes pregnant a reasonable maternity leave. Such a

maternity leave may be a leave of absence without pay. Seniority and pension rights may or may not continue to accrue during maternity leave, but upon return to employment such rights shall not be taken from the employee because she took a maternity leave.

"Upon application for return to employment following such reasonable maternity leave, the employer shall offer the job she held before going on the leave of absence, or a substantially equivalent position (in pay and skill) if such jobs are vacant and available. If such jobs are not vacant and available, the employer shall offer her any other available position for which she is eligible until such time as the employer can through recognized placement procedures offer her the job she held before or one substantially similar to it." This regulation of the Commission was intended to implement Title VII of the Civil Rights Act of 1964, 42 U.S.C., Section 2000(e)-2. Although I may not be bound by the regulation of the Commission, I certainly may be guided by its interpretation of a pregnant woman's rights under the federal and state law.

I find further support for my position in the fact that the Secretary of Education reversed the action of the school board in connection with the charge of incompetency when the Secretary stated: "The testimony in this case fails to substantiate a charge of incompetency. The appellant, although pregnant, has been teaching daily until twelve days prior to the end of the term, when she was suspended by the superintendent. The board presented no testimony indicating any physical incapacity or disability that might affect the teacher's capabilities. . . ." I am not impressed with the analysis of the lower court on the subject of incompetency. The record in this case in no way supports a finding that this appellant was not competent to continue her teaching duties after the birth of her child.

Based upon the above discussion, I would hold that the regulation of this school district dated July 17, 1967, as quoted above, is invalid and unconstitutional and therefore I would reverse the order of the lower court.