Amelia WILLIAMS, on behalf of herself and other female certificated employees of the San Francisco School District, Plaintiff,

v.

SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Defendants.

Civ. No. 72-305.

United States District Court, N. D. California.

March 21, 1972.

44.  402 U.S. 313, 334, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788.

Cooper, White & Cooper, Paul H. Verriere, Jr., Alan C. Freeland, Richard A. Seitz, San Francisco, Cal., for plaintiff.

Thomas M. O'Connor, City Atty., David I. Kroopnick, Deputy City Atty., Irving G. Breyer, San Francisco, Cal., of counsel, for defendants.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

HARRIS, District Judge.

### I. *Introduction*

This action arises from a Complaint for Injunctive Relief and Damages filed herein on February 18, 1972. The matter is now before the court on plaintiff's Motion for Preliminary Injunction challenging the legality of the defendant San Francisco Unified School District's maternity leave policy.

Plaintiff is a female employed by the defendant San Francisco Unified School District [hereinafter "District"] as a social worker in its special program for pregnant students at San Francisco General Hospital. As such, she is a "certificated" employee, a category reserved for positions requiring professional qualifications. Her work consists of advising students in various aspects of their pregnancies, helping them find alternatives available upon the birth of their children, and coordinating community resources in pursuit of those alternatives.

Plaintiff is herself pregnant and has been advised by her doctor that delivery can be anticipated in late April 1972. Pregnant certificated employees of the District are subject to its policy of mandatory maternity leave which provides:

> Period of Leave—A certificated employee shall absent herself from duty for a period of at least two months before the anticipated birth of her child and has the option to return after one month following the date of birth, upon the approval of the attending physician, or to return after six months following the date of birth (in any event the leaving or returning date must not fall within two weeks from the end of any semester.) The total maternity leave shall not exceed a total of nine months.

> In case of miscarriage or death of the child, the leave of absence for maternity may be abridged at the beginning of any semester upon the recommendation of the Superintendent and the approval of the Board provided that the health certificate from the Medical Advisor states that the teacher is physically and mentally able to resume her duties.[1]

It appears, however, that the following amended statement of policy is that which is distributed to employees:

> *Period of Leave*—A certificated employee shall absent herself from duty without pay for a period of at least two months before the anticipated birth of her child and has the option of returning one month following the

[1]. This statement of the maternity leave policy, which was made available to plaintiff, differs from the statement of policy as actually adopted by the Board of Education of the District. As originally adopted, said policy (Board Policy P4153, para. 1) provided:

> 1. *Period of Leave.* A certificated employee shall absent herself from duty for a period of at least two months before the anticipated birth of her child and has the option to return after one month following the date of birth, and shall return not later than six months following the date of birth. Prior to returning to work the employee must have approval of the attending physician. The leaving or returning date must not fall within two weeks from the end of any semester.

date of birth (with her doctor's approval), except that if such period terminates within six weeks of the end of the semester, such leave shall extend to the end of the semester. She may have up to six months before and six months after the birth of the child.

Plaintiff first learned about the District's maternity leave policy in the latter part of January 1972. She consulted her obstetrician and was advised that there was no medical objection to her continuing employment up to the date of delivery if she so desired. Plaintiff then spoke to her immediate supervisors concerning her desire to work past that period required for leave under the District's maternity leave policy. These supervisors were unable to help plaintiff, and as a result she contacted the Supervisor of Personnel Services for the District.

Plaintiff spoke to the Supervisor of Personnel Services on January 26, 1972, at which time she tendered her written request for a leave of absence beginning in April 1972. She indicated that she was in good health and intended to continue work until the time of delivery. Finally, plaintiff presented to the Supervisor a written statement from her obstetrician, Dr. N. Edward Boyce, Jr., which read:

To Whom It May Concern:

Mrs. Williams is under our care for pregnancy with an estimated due date of late April 1972.

We are aware she is currently employed by the San Francisco Unified School District as a social worker in the special school program and we are perfectly happy to grant our permission for her to continue work for as long a period of time during this pregnancy as she wishes and as long as she feels well and is doing well medically. This includes working up until she goes into labor as far as we are concerned.

It has been our experience that many working mothers to be are far better

off working from both physical and psychological standpoints and in such individuals and in this particular individual no advantage at all is seen in her stopping work an arbitrary, preselected date.

If you need any further information please do not hesitate to contact me.

The Supervisor was unable to afford plaintiff any relief from the terms of the District's maternity leave policy, and dictated in her presence a letter advising her that she would be terminated on February 29, 1972.

## II. *Discussion*

### A. *Jurisdiction*

The first paragraph of plaintiff's Complaint alleges that the action arises under 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment of the United States Constitution. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).

■■ This action cannot arise under 42 U.S.C. § 1981 because its provisions are applicable only to claims for racial discrimination. Fitzgerald v. United Methodist Community Center, 335 F. Supp. 965, 966 (D.Neb.1972).

The action is properly brought, however, under the provisions of 42 U.S.C. § 1983. Beginning with the Supreme Court's decision in Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961), which held that an action for money damages will not lie against a municipal corporation under § 1983 because such entity is not a "person" within the meaning of the statute, a long line of cases has held the same prohibition to be applicable to damage suits against school boards or districts. E. g., Butts v. Dallas Independent School District, 436 F.2d 728, 729 (5th Cir. 1971); Harvey v. Sadler, 331 F.2d 387, 390 (9th Cir. 1964); Schreiber v. Joint School District No. 1, Gibraltar, Wis., 335 F. Supp. 745, 747 (E.D.Wis.1972) (but awarding back pay under order of reinstatement upon theory that such relief is equitable rather than legal in na-

ture); Callaway v. Kirkland, 334 F. Supp. 1034, 1036–1037 (N.D.Ga.1971); Abel v. Gousha, 313 F.Supp. 1030, 1031 (E.D.Wis.1970).

An equally respectable line of authority has restricted Monroe v. Pape, *supra,* to its particular holding and has permitted the granting of injunctive or other equitable relief against school boards or districts. *E. g.,* Lee v. Board of Regents of State Colleges, 441 F.2d 1257, 1260 (7th Cir. 1971); Butts v. Dallas Independent School District, supra at 729; Harkless v. Sweeny Independent School District, 427 F.2d 319, 323 (5th Cir. 1970) cert. den., 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Schreiber v. Joint School District No. 1, Gibraltar, Wis., *supra,* 335 F.Supp. at 747; Callaway v. Kirkland, supra, 334 F.Supp. at 1036, 1037; Adams v. School Board of Wyoming Valley West Sch. Dist., 53 F. R.D. 267, 269 (M.D.Pa.1971). *But see* Federation of Delaware Teachers v. De La Warr Bd. of Ed., 335 F.Supp. 385, 387 n. 4 (D.Del.1971); Hernandez v. Noel, 323 F.Supp. 779, 782 (D.Conn. 1970) (semble).

Accordingly, the federal courts have sustained a finding of jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, where urged, in every case thus far reported concerning a challenge to a maternity leave policy. Jinks v. Mays, 332 F.Supp. 254, 256 (N.D.Ga.1971); LaFleur v. Cleveland Board of Education, 326 F.Supp. 1208, 1210 (N.D.Ohio 1971); Cohen v. Chesterfield County School Board, 326 F.Supp. 1159 (E.D. Va.1971); Guelich v. Mounds View School District, 4 FEP 338 (D.Minn. Nov. 22, 1971).

## B. *The Merits*

Plaintiff contends that the District's maternity leave policy constitutes arbitrary and invidious discrimination against female certificated employees, thus denying them equal protection of the laws within the meaning of the Fourteenth Amendment. Plaintiff points out that among all illnesses or physiological conditions, the District has singled out pregnancy as the subject of the restrictive provisions of its mandatory leave policy. In the case of other illnesses or physiological conditions, leave of absence does not commence until medical necessity or the employee's wishes warrant such absence. Moreover, in the case of all other physiological conditions, the leave of absence is with pay until accumulated sick leave days have been exhausted; this is not true, however, for maternity leave.

In the case of leaves based on other physiological conditions the absent employee is entitled to regular pay less a deduction toward partial pay for the substitute employed. Paid leave during illness can continue for up to five months in any one school year or until exhaustion of accumulated sick leave days, whichever period is longer. The employee may return to work as soon as he wishes and is medically fit to do so; there is no limitation on the employee's right to return from normal sick leave at any time during the semester.

Plaintiff has adduced two affidavits in support of her contention that she is and will continue to be medically able to carry out her employment duties up to the date of delivery. The first affidavit is from Dr. N. Edward Boyce, Jr., her attending obstetrician, and recites:

> I am a medical doctor specializing in obstetrics, and have been so engaged for the past six years.
>
> I have treated AMELIA WILLIAMS throughout the course of her current pregnancy. Her pregnancy is medically normal in all respects and she is in good health. There is no medical reason why Mrs. Williams should not continue her employment without impairment of efficiency as long as she feels able to do so.
>
> While all pregnancies differ, the policy of the San Francisco Unified School District of terminating all pregnant women two months prior to the estimated delivery date is medically unjustifiable. From a medical standpoint, the period of a woman's

pre and post delivery absence from employment can only be determined on a case by case basis.

The second affidavit is from another obstetrician, Dr. Phillip Goldstein, and it recites:

I am a medical doctor specializing in obstetrics, and for the past 2½ years have been affiliated with the special program for pregnant school students organized and administered by the San Francisco Unified School District.

It is the policy of said District to require attendance of such students in the said program to a point in time as near to the student's delivery date as is medically feasible, and to require such students to return to such program as soon as possible after delivery.

While all pregnancies differ, the policy of the San Francisco Unified School District of terminating all pregnant women two months prior to their estimated delivery date, is medically unjustifiable. From a medical standpoint, the period of a woman's pre and post delivery absence from employment can only be determined on a case by case basis.

■ Although given the opportunity to do so, defendants did not attempt to rebut the foregoing affidavits either through the introduction of counter-affidavits or live testimony at the time of hearing on plaintiff's Motion for Preliminary Injunction. Accordingly, this court is required to take as true the statements of fact contained in the affidavits. Corning Glass Works v. Lady Cornella, Inc., 305 F.Supp. 1229, 1231 (E.D.Mich.1969); Western Air Lines v. Flight Engineers Internat'l Ass'n., 194 F.Supp. 908 (S.D.Cal.1961).

In opposition to plaintiff's Motion for Preliminary Injunction and in support of the District's maternity leave policy, defendants contend that there is here no discrimination against women as proscribed by the equal protection clause of the Fourteenth Amendment; rather, only women with far advanced pregnancy are affected, a permissible classification. The remaining argument advanced by defendants is based on the contention that by its maternity leave policy the District protects itself against the increased chance of tort liability stemming from the alleged injury-prone nature of women in advanced pregnancy. Defendants have cited only Schattman v. Texas Employment Commission, 459 F. 2d 32, (5th Cir. 1972) reversing 330 F.Supp. 328 (W.D.Tex.1971), as legal authority in support of the District's maternity leave policy.

This court is now called upon to measure the classification created by the District's maternity leave policy against the reqirements of the Fourteenth Amendment's guarantee of equal protection of the laws for all citizens. When a state[2] classifies any group of its citizens such that they receive treatment different from the rest,

The Equal Protection Clause requires more of a state law than non-discriminatory application within the class it establishes. McLaughlin v. [State of] Florida, 379 U.S. 184, 189–190 [85 S.Ct. 283, 286–287, 13 L.Ed.2d 222]. It also imposes a requirement of some rationality in the nature of the class singled out.

\* \* \* \* \* \*

But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classifi-

---

**2.** There can be no doubt that a school board or district is an arm of government whose action is state action and therefore subject to constitutional restraints. *See* Schreiber v. Joint School District No. 1, Gibraltar, Wis., *supra*, 335 F.Supp. at 747. The maternity leave policy in question here was adopted by the District to implement the provisions of California Education Code § 13456, which provides for the governing boards of school districts to regulate leaves of absence for its certificated female employees who become pregnant.

cation is made." [Citations omitted.] Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966).

*See also* Johnson v. New York State Education Department, 499 F.2d 871, 876 (2d Cir. 1971); Williams v. Field, 416 F.2d 483, 486 (9th Cir. 1969), cert. den., 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970); Deal v. Cincinnati Board of Education, 369 F.2d 55, 59 (6th Cir. 1966), cert. den., 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed.2d 114 (1967); Jinks v. Mays, supra, 332 F.Supp. at 257.

The Supreme Court recently reiterated its position on the application of the equal protection clause in Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971), its first-ever decision finding sex discrimination to be violative of the clause: [3]

In applying that [equal protection] clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that Amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989] (1920).

In addition to the test developed by the Supreme Court that a questioned classification must be rationally related to a legitimate state goal to be upheld under the equal protection clause, a more demanding standard must be met where, as here, the members of the class allegedly discriminated against assert a threat to their basic constitutional or civil rights. As the Ninth Circuit held in United States v. Thoresen, 428 F.2d 654, 658 (9th Cir. 1970):

When legislative classifications threaten basic civil rights, the Equal Protection Clause requires "some overriding statutory purpose," and the lines drawn in such statutes are subject to "the most rigid scrutiny." [Citations omitted.]

The plaintiff herein has asserted the basic right to employment free of invidious discrimination. Under this contention the court must ask not only whether the classification challenged here is rationally related to a legitimate objective of the defendants, but whether, in addition, it promotes any "compelling governmental interest" as that standard is set forth in Shapiro v. Thompson, 394 U.S. 618, 627, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ This court concludes that for the purposes of the relief sought here, the District's maternity leave policy is neither rationally related to a legitimate objective nor promotes any compelling interest of the defendants.

The District's maternity leave policy bears on the interests of several groups: the female certificated employees affected by it; the District in its capacity as an administrative body; the school children within the jurisdiction of the District; and the interest of all others, or the public interest.

On the record before this court, it is undisputed that the plaintiff is medically able to work efficiently until the date of her delivery if she chooses to do so. Defendants have presented no proof whatever that plaintiff is not medically fit to do so, or that her efficiency will

3. Note, "Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?" 84 Harv.L. Rev. 1499, 1502 (1971): "[T]he Supreme Court has not yet held that a sex distinction has violated the equal protection clause of the fourteenth amendment." [Footnote omitted.]

be impaired to a marked degree by advanced pregnancy, or that work during advanced pregnancy would be in in any manner harmful to her.

In Schattman v. Texas Employment Commission, *supra*, the Fifth Circuit was faced with a similar challenge to the maternity leave policy of the Texas Employment Commission, an arm of the State of Texas. The district court had previously upheld its jurisdiction in the case under Title VII of the Civil Rights Act of 1964 upon the theory that the defendant, although a political subdivision of a state exempt from the coverage of the Act by 42 U.S.C. § 2000e(b) (1), was nevertheless swept back into its folds since it was an employment agency covered by the Act under 42 U.S.C. § 2000e-2(b). The district court went on to find that the defendants had not sustained their burden of justifying the challenged maternity leave policy and concluded that the policy was constitutionally invalid.

The Fifth Circuit reversed on the ground of lack of jurisdiction; it held that the "employment agency" provision of Title VII did not operate to shear the Texas Employment Commission of the immunity granted it as a "political subdivision." Judge John Minor Wisdom specially concurred, agreeing with the majority as to their statements on the merits of plaintiff's equal protection argument, but dissenting as to the conclusion of no jurisdiction.

The majority went on to discuss the merits of the case, but such discussion must be considered as dictum in view of the unequivocal finding that the court below lacked jurisdiction in the first instance. The majority also referred to the conflicting evidence before the district court. The plaintiff's personal physician had testified that the plaintiff would be 'physically able to work until within two weeks of her confinement and that, in fact, she could work right up to the date of delivery without any problems. He also affirmed that a woman seven months pregnant could do as much work as a woman who was not pregnant.

On the other hand, the district court also heard testimony from an obstetrician to the effect that women in their latter months of pregnancy needed help from other employees to get around and perform certain other tasks; that their personalities were subject to change and their irritability increased; that they would frequently run to the bathroom or to get food; and that they became hard to live with and employ. The Fifth Circuit noted that the district court made no findings as between the conflicting testimony of these two doctors. It appears to this court, however, that the Fifth Circuit did itself undertake to make that choice and in the face of the implied findings to the contrary made by the district court.

The foregoing discussion of the *Schattman* case amply demonstrates the distinction between it and the case before this court. *Schattman* was decided on lack of jurisdiction, a defect not present in the instant case. There was at least some evidence in *Schattman* relating to the weakened condition of women during the latter stages of pregnancy which might, if believed, support a finding that termination for such reason was justified; no such evidence has been adduced herein. Finally, to the extent the majority in *Schattman* did reach the merits of that case, this court must dissent from the reasoning and analysis employed there.

Language from the opinion of the Fifth Circuit decision indicates that court's obvious concern with the administrative problems that the Texas Employment Commission would have to face were it required to make case by case determinations of when pregnant employees would have to take leaves of absence:

Is it constitutionally required of a state agency or any other employer of many females that they shall make a daily, or even momentary, evaluation of the condition and hazards of its

pregnant female employees after they reach the far advanced stage?

Is it conducive to the reasonably efficient operation of a state agency that it should involve itself in strife, discord, unhappiness, jealousies, and recriminations caused by allowing one woman to work through the eighth or ninth month of pregnancy as a matter of opinion on the part of some supervisor while requiring another to stop at the end of the seventh? *Id.* at p. 39 of 459 F.2d.

We think that the Fifth Circuit's rhetorical questions misstate the issue. It is not sufficient to uphold a practice otherwise violative of the standards governing the equal protection clause to say that the alternative to the classification challenged would create a situation which might require more work on the part of the administering agency. The Supreme Court rejected a similar contention in Reed v. Reed, *supra*, 404 U.S. at 76–77, 92 S.Ct. at 254, that male administrators could be favored over equally qualified female administrators on the theory that this avoided hearings in individual cases:

Clearly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial question, however, is whether § 15–314 [of the Idaho Probate Code, which provided that of several persons claiming and equally entitled to administer an intestate's estate, males were to be preferred to females] advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not. To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; and whatever may be said as to the positive values of avoiding intrafamily controversy, the choice in this context may not

lawfully be mandated solely on the basis of sex.

Moreover, it is not at all clear that where the agency in question is a school district, and not the Texas Employment Commission, that problems of substitution would pose any overweening obstacles to efficient administration. Even under the statement of policies as it now stands, the District contemplates several types of leaves the granting of which require a discretionary decision in the first place; these include leaves for illness where the employee desires to receive salary benefits; leaves under the rubric "rest"; leaves for personal business; and leaves for professional growth, travel, and study.

Substitution of replacements for pregnant employees forced to absent themselves on short notice because of imminent delivery also poses no substantial problem. The District's present administrative apparatus seems entirely adequate to cope with such situations, particularly since the use of substitutes is a common and widespread practice. Most onsets of illness, unlike pregnancy, result in employee absences with far less advance notice than is the case with pregnancy, and such other illnesses may result in absences for longer periods than are required for normal pregnancies. It is for just such contingencies that the District has made provision for a pool of qualified substitutes available as temporary replacements on short notice.

At least one school district, faced with a challenge to its maternity leave policy, has answered the rhetorical questions posed in the *Schattman* case in the affirmative. In Guelich v. Mounds View School District, 334 F.Supp. 1276 (D. Minn.1972), the district court dismissed a challenge to a school district's maternity leave policy on the ground of mootness. At the time of the plaintiff's alleged injury the defendant school district therein had a maternity leave policy similar to that in the instant case, albeit with longer periods of required absences. By the time of hearing on de-

fendants' motion to dismiss, however, the school district had amended its former policy by adopting a new provision for maternity leaves which eliminated the provisions complained of by the plaintiff. The new policy incorporated a method for flexible determination of how long a pregnant mother might teach and included a provision that the last date of employment would be jointly determined by the teacher and her principal. Based upon this change and the reasonable expectation that the conduct complained of would not recur, the district court granted defendant's motion to dismiss, without comment on the merits of plaintiff's substantive argument.

Defendants herein have also made the argument, unsupported by legal authority or proof of past experiences or the experiences of other school districts, that permitting pregnant certificated females to work until the date of delivery would increase the District's potential tort liability because of these employees' increased likelihood of injury.

■ There is no basis in law or fact for this contention. A pregnant female, as with any other person subject to illness or other physical disability, remains liable to the well-settled standard of care for negligence requiring that the "reasonable man" test as applied to her be in fact a reasonable pregnant female situated such as she. See Restatement of Torts 2d (1965), vol. 2 § 283 at 12; § 283C at 18; Prosser on Torts § 32 at 151, 152 (4th ed. 1971); 35 Cal.Jur.2d Negligence § 84 at 593.

In addition to the interests of the female employees concerned and of the District, there is also the interest of the school children under the supervision of the District, as noted above. This factor, too, points in the direction of granting relief herein.

There can be no question that in this day matters affecting pregnancy must be faced by school administrators everywhere. The District has recognized this in its own salutary special program aimed specifically at counselling young pregnant females and in which the plaintiff is employed. It is no longer permissible to treat women in that manner described by John Donne in the passage at the end of *Love's Alchymie*:

> Hope not for minde in women, at their best
> Sweetness and wit, they are but *Mummy* possest

All school children under the aegis of the District are entitled to the greatest possible degree of continuity in their educational programs. This desideratum is indisputably frustrated when, for example, a female teacher, otherwise qualified and capable of performing her duties, is hoicked out of the classroom for at least a third of the effective teaching year because she has become pregnant. The impact of such removal, particularly in the lower grades wherein children receive all their instruction from a single teacher, must be substantial indeed.

This need for classroom continuity was expressed in another maternity leave case, La Fleur v. Cleveland Board of Education, *supra*, 326 F.Supp. at 1211, 1213, although the court inexplicably relied on this finding as a basis for upholding the maternity leave policy challenged there.

The discussion on the merits in *La Fleur* is distinguishable, however, since it was shown there that the maternity leave policy was adopted to end indignities suffered by pregnant teachers at the hands of snide school children. The evidence also showed that although prior to the adoption of the policy no child had ever been born in the classroom, a few times it had been uncomfortably close. The court intimated that pregnant teachers were also more likely to be injured in view of the increasing incidence of violence in the Cleveland public schools. Finally, the court focused on the physiological changes which accompany pregnancy and which tend to weaken a female's health in certain respects.

Several of the reasons advanced by the court in *La Fleur* in support of its decision seem speculative or legally in-

sufficient. Even assuming, however, that they were valid under the state of the record in that case, it is evident that the same considerations have not been, and in some instances could not be, urged under the present state of the record in this case.

The fourth and final interest group to be considered consists of all other interested parties, such as co-workers, the husbands of the pregnant certificated employees affected by the District's maternity leave policy, and other concerned members of the public. The views or needs of none of these groups have been brought directly before this court, but in no event does it appear that any of their interests are furthered by the District's maternity leave policy.

Despite the statement of the Fifth Circuit in Schattman v. Texas Employment Commission, *supra,* to the effect that pregnant women need help in getting around, and therefore pose a potential burden to co-workers, there was no proof in that case or any other case dealing with maternity leaves that any female employee's co-worker, anywhere, had ever complained of having to help her because of her pregnancy. And no such contention or proof thereon has been proffered in this case.

This court is also unable to gauge the opinion of the husbands of the women subject to the District's maternity leave policy. If such husbands desire that the pregnant women in question absent themselves from their jobs, either on account of their own health or the health of the unborn child, they remain free to effect that end whether or not the District has a maternity leave policy as is now in effect.

No general interest has been asserted on behalf of the remaining members of the public, and this court cannot envision one such as to support the restrictive provisions of the District's maternity leave policy.

Although a few recent cases, not cited to the court by either party herein, have dealt with issues analogous to that pres-ently before the court, none of them are dispositive.

Three of these cases have already been discussed and distinguished by the court: Schattman v. Texas Employment Commission, *supra*; Guelich v. Mounds View School District, *supra*; and La Fleur v. Cleveland Board of Education, *supra*.

In Miller v. Industrial Commission, 480 P.2d 565 (Colo.1971), the Colorado Supreme Court upheld a denial of unemployment benefits to a female employee separated from her job because of pregnancy. The court held that this action did not constitute unreasonable discrimination against female employees. The court cited a single decision of the Alabama Court of Appeals for the proposition that,

> Such a classification [denying unemployment benefits to female workers discharged because of pregnancy] founded on the special consideration of pregnancy cannot be said to be unreasonable and therefore unconstitutional in light of the disability caused by a condition of pregnancy in relation to her employment responsibilities. *Id.* at 568.

The Colorado Supreme Court did not indicate what constitutional standard it was employing and did not have the benefit of the decision to be rendered thereafter by the United States Supreme Court in Reed v. Reed, *supra*. The Colorado Supreme Court also failed to indicate the nature of the disability caused by pregnancy and how it might diminish any particular employment responsibilities under consideration. In sum, the Colorado Supreme Court was dealing with a set of facts different from those before this court, and hence its decision is not binding or even persuasive herein.

In Cerra v. East Stroudsburg Area School District, 285 A.2d 206 (Pa. Cmwlth.Ct.1971), the court upheld the discharge of a teacher who had failed to resign at the end of her fifth month of pregnancy as required by a regulation of the board of education which employed

her. The plaintiff there argued that pregnancy was an illness like any other illness and therefore it would be unlawfully discriminatory to classify it otherwise. As the court pointed out, however, at trial the plaintiff's own medical expert testified that current thinking regarded pregnancy as a physiological condition, not an illness. The defendant board of education based its termination policy on its previous unsuccessful experience with maternity leaves because several teachers had opted not to return to work following such leaves.

The majority opinion in the *Cerra* case is readily distinguished from the instant case, and its cursory analysis does not commend itself to this court, a view bolstered by the language of the two vigorous dissents thereto. The plaintiff in *Cerra* did not counter the factual evidence offered by the board of education and did not offer any evidence that good management called for treatment other than that contained in the challenged regulation. Apparently the board of education in *Cerra* had little or no facility for replacing unavailable employees with substitutes.

None of these circumstances is present before this court. Defendants herein have not argued that the District's maternity leave policy is necessary to secure the required number of female certificated employees or that there are insufficient substitutes available for emergency duty. Plaintiff herein has also urged strenuously that good management *does* call for a policy different from that now employed by the District with respect to maternity leaves. It should be further noted that nowhere in the majority opinion does there appear any discussion of federal constitutional standards under the equal protection clause or any citation to a United States Supreme Court case dealing therewith; indeed, such constitutional considerations, with an appropriate citation to Reed v. Reed, *supra*, were exclusively in the domain of one of the dissents.

If anything, the testimony of the medical expert quoted by the majority in the *Cerra* case supports the position taken by the plaintiff herein, since the expert testified that he encouraged pregnant patients to carry on their normal activities throughout the entire pregnancy. When asked whether this was his personal viewpoint, he replied that it was not only his personal viewpoint, but also that in the field of obstetrics and gynecology in general. 285 A.2d 206.

The Ninth Circuit has not yet ruled on the issue before this court, although in Struck v. Secretary of Defense, 460 F.2d 1372 (9th Cir. 1971), it affirmed the dismissal of an action brought by a female officer who challenged her involuntary discharge from the Air Force required by reason of her having become pregnant.

Plaintiff in the *Struck* case attacked the Air Force regulation which so provided on the grounds that it denied her due process of law in violation of the Fifth Amendment, as well as her right to freedom of religion under the First Amendment. Unlike the instant case, the defendants in *Struck* advanced, and the Ninth Circuit accepted, a valid military reason to justify the Air Force regulation attacked:

As to Regulation 36–12 we are not persuaded that it is either arbitrary or irrational. In the instant case, Captain Struck was on duty in the nursing activity of the Air Corps in Viet Nam in September 1970. By that time she had been pregnant for several months. If, by an error of our own forces, or an attack by the enemy, the hospital of which she was in charge or in which she worked had been damaged and patients and hospital personnel had been injured or had been frightened and confused, a not improbable consequence might have been that the Captain, as a result of injury or shock might have suffered a miscarriage, and become a patient instead of a nurse. As such, instead of being a useful soldier, she would have

been a liability and a burden to the Air Force. At 1374, 1375.

The remaining case dealing with the maternity leave issue which has come to this court's attention is Cohen v. Chesterfield County School Board, *supra*. In *Cohen*, a female teacher brought suit against her employer county school board because of its regulation which required her to take a leave of absence at the end of her fifth month of pregnancy.

The court, in holding for the plaintiff, used language which is relevant to the instant case:

> The unrefuted medical evidence is that there is no medical reason for the Board's regulation. As a matter of fact, pregnant women are more likely to be incapacitated in the early stages of pregnancy than the last four months. [Footnote omitted.] Further, there is no psychological reason for a pregnant teacher to be forced to take a mandatory leave of absence. In short, since no two pregnancies are alike, decisions of when a pregnant teacher should discontinue working are matters best left up to the woman and her doctor.

> In addition, no tenable administrative reason has been advanced by the defendants in defense of the provision. The reasons given by Dr. Kelly and the members of the School Board for the policy, such as fear of pushing with resulting injury to the fetus, and inability to carry out responsibilities in fire drills, are nugatory, and based on no empirical data whatsoever. Neither has there been a substantial study conducted upon which to base the contention that absences will increase during the latter stages of pregnancy. Basically, the four month requirement set forth in the provision was arbitrarily selected. 326 F.Supp. at 1160.

The court examined the requirements of the equal protection clause and concluded that:

> The maternity policy of the School Board denies pregnant women such as Mrs. Cohen equal protection of the laws because it treats pregnancy differently than other medical disabilities. Because pregnancy, though unique to women, is like other medical conditions, the failure to treat it as such amounts to discrimination which is without rational basis, and therefore is violative of the equal protection clause of the Fourteenth Amendment. [Citations omitted.] *Id.* at 1161.

The facts in the *Cohen* case were virtually identical to those now before this court. That the maternity leave policy in *Cohen* provided for a slightly longer pre-delivery absence—four months rather than two—does not serve to distinguish it from the instant case. Based on the state of the record before it, we think the decision of the court in *Cohen* was eminently sound and recommends itself to this court because of the similarity of the record herein.

In determining whether the District's maternity leave policy represents a rational response to its objectives, we must examine what they are. Since defendants have been vague at best, this court can only speculate as to what those objectives are.

Even assuming that the District would attempt to support its maternity leave policy by referring to every rationale forwarded in any of the cases dealing with a similar issue, it nonetheless remains true that its methods of dealing with pregnancy are draconian with respect to the disabilities posed thereby. No matter what the objectives of the District are under its maternity leave, they could be served by means less restrictive than those now employed.

For example, the District might have a maternity leave provision but of significantly shorter duration than that now in effect. Or the District might continue its present policy but provide for partial or whole pay for some or all of the period of absence. Or the District might scrap its present policy in favor of a more flexible approach which would permit case by case determination

of when a pregnancy leave was called for either by reference to a doctor's periodic certificate of good health and continued ability to work or by reference to the satisfaction, rationally founded, of supervisory personnel.

We hasten to add that the above suggestions are just that and nothing more; the situations contemplated thereby are not now before this court and we express no opinions on their constitutional validity. What they do illustrate, however, are viable alternatives by which the District could preserve its legitimate interests, whatever they might be.

Accordingly, and solely for purposes of the Motion for Preliminary Injunction now before this court, we find that the District's maternity leave policy is violative of the equal protection clause of the Fourteenth Amendment because it singles out pregnant certificated employees for classification without any rational relationship to any legitimate objective of the District and, in addition, promotes no compelling interest of the District or State of California.

This conclusion is, of course, not final. "The grant of an order for a preliminary injunction is not a final determination of the case." Washington Capitols Basketball Club, Inc. v. Barry, 419 F.2d 472, 475, (9th Cir. 1969) affirming 304 F.Supp. 1193 (N.D.Cal.1969).

■ On a motion for preliminary injunction the movant need not prove his case with that degree of finality required to support the granting of relief at the trial on the merits. The movant need only establish a reasonable probability or possibility of eventual success on the merits. *See* Costandi v. AAMCO Automatic Transmissions, Inc., 456 F.2d 941 (9th Cir. 1972); Tuxworth v. Froehlke, 449 F.2d 763, 764 (1st Cir. 1971); Nolop v. Volpe, 333 F.Supp. 1364, 1369 (D.S.D.1971).

■ Even where the movant's showing of probable success on the merits is uncertain, he may nonetheless be enti-

tled to interlocutory relief if the balance of hardships tips decidedly in his favor. Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 20 (2d Cir. 1971).

As summarized by the district court opinion in Washington Capitols Basketball Club, Inc. v. Barry, *supra*, 304 F. Supp. at 1197:

It is uncertain whether plaintiff will prevail at the trial on the merits; however, it is clear that plaintiff need not prove its case with absolute certainty prior to the trial in order to succeed in its motion for a preliminary injunction. The issuance of a temporary injunction was affirmed on appeal in the *Hamilton Watch* case [Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953)], *supra* 206 F.2d at 740, wherein the Court noted that " * * * it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Moreover, "[T]he burden [of showing probable success] is less where the balance of hardships tips decidedly toward the party requesting the temporary relief." Checker Motors Corporation v. Chrysler Corporation, 405 F. 2d 319, 323 (2d Cir. 1969), cert. den., 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed. 2d 777 (1969), citing Dino De Laurentiis Cinematografica, S. p. A. v. D–150, Inc., 366 F.2d 373, 374–375 (2d Cir. 1966).

■ We think the plaintiff herein has brought herself within these requirements; apart from our belief in the probability of her ultimate success on the merits, she has sustained her burden of showing that, under the present record, the balance of hardships does tip decidedly in her favor.

Therefore, plaintiff's Motion for Preliminary Injunction is hereby granted. It is so ordered.